LUTTIG, Circuit Judge,
dissenting from denial of rehearing en banc:
As should be true under a rule of law, the reasoning underlying our resolution of the important issue presented by this appeal has implications beyond the particular dispute before us. In this instance, those implications are for no less commanding constitutional interests than the President’s power to conduct war and the right of our citizens to be free from governmental restraint except upon lawful justification.
As my colleagues have recognized, the panel’s opinion resolving the important issue presented by this suit is unpersuasive, because of its exclusive reliance upon a mistaken characterization of the circumstances of Hamdi’s seizure as “undisputed,” when those circumstances are neither conceded in fact, nor susceptible to concession in law, because Hamdi has not been permitted to speak for himself or even through counsel as to those circumstances. That the panel opinion is unpersuasive is borne out by no less significant a fact than that the panel itself, as evidenced by the two separate concurrences today, cannot even now agree as to either the proper interpretation or defense of its opinion.
Additionally, beyond the opinion’s un-persuasiveness, its refusal to rest decision on the proffer made by the President of the United States, and its insistence instead upon resting decision on a putative concession by the detainee, has yielded reasoning that all but eviscerates the President’s Article II power to determine who are and who are not enemies of the United States during times of war.
Because of the facial unpersuasiveness of the court’s opinion, and because the opinion of law that resolves the issue raised in this appeal is of even greater *358 constitutional importance than the result reached by that opinion, I would grant the requested rehearing en banc. I believe that the significance of the issue that has been presented calls for an opinion from this court that directly addresses that issue and resolves it unambiguously and convincingly (however broadly or narrowly), based upon the facts as they appear in the record and the arguments as they have been well made by the parties.
I.
On the central question presented in this case, it is evident that the panel found itself simply unwilling to allow petitioner Hamdi to challenge the facts supporting his designation by the Executive as an enemy combatant, under any standard of review urged by those who appeared on behalf of Hamdi. However, the panel was equally unwilling either to adopt the “some evidence” standard and accept as sufficient under that standard the facts offered by the government as justification for Hamdi’s seizure or to hold that the Judiciary is without all authority to review the President’s designation of an individual as an enemy combatant, as alternatively urged by the government. Faced with this decisional paralysis, the panel retreated to ground that not only neither party attempted to defend, but that is transparently indefensible — holding that Hamdi cannot challenge, and the court cannot question, the facts proffered by the government in support of Hamdi’s particular seizure and detention as an enemy combatant, for the asserted reason that Hamdi has conceded that he was seized in a foreign combat zone.
A.
In resting its decision on this factually and legally untenable ground, the panel reneged on the promises it hastily made to the parties at the litigation’s inception.
It promised the citizen seized by the government “meaningful judicial review” of his claim that he was not an enemy combatant, pointedly refusing to “em-brac[e] a sweeping proposition — namely that, with no meaningful judicial review, any American citizen alleged to be an enemy combatant could be detained indefinitely without charges or counsel on the government’s say-so.” Hamdi v. Rumsfeld, 296 F.3d 278, 283 (4th Cir.2002) (“Hamdi II”). But it ultimately provided that citizen a review that actually entailed absolutely no judicial inquiry into the facts on the basis of which the government designated that citizen as an enemy combatant.
One could hardly be faulted for wondering why, as the panel held, more is “unnecessary to a meaningful judicial review” of a challenge to an Executive’s enemy combatant designation than a concession of seizure in a foreign combat zone. Under even an exceedingly deferential standard of review, such, though it is relevant to, would hardly seem dispositive of whether one has been legitimately classified as an enemy combatant. The embedded journalist or even the unwitting tourist could be seized and detained in a foreign combat zone. Indeed, the likelihood that such could occur is far from infinitesimal where the theater is global, not circumscribed, and the engagement is an unconventional war against terrorists, not a conventional war against an identifiable nation state. But surely we would not conclude that that journalist or tourist (who could be expected to readily admit to his seizure in the foreign combat zone) had received meaningful judicial review of his claim that he was not an enemy combatant, if that claim received no judicial scrutiny at all merely because he stipulated that he was seized in that foreign combat zone. It is undoubt *359 edly for these reasons that the Executive neither designated Hamdi an enemy combatant on the basis of his mere seizure in a foreign combat zone nor defends its designation in this court on such basis.
But as the panel disowned its promise to the detainee to provide him meaningful judicial review, so also did it disown its promise to the Executive to accord him the substantial deference to which he is constitutionally entitled for his wartime decisions as to who constitute enemies of the United States. The panel promised the Executive that the Judiciary would not sit in full review of his judgments as to who is an enemy combatant of the United States, but it adopted a rule that will henceforth do just that, cast the Judiciary as ultimate arbiter, in each and every instance, of whether the Executive has properly so classified a detainee.
Upon a moment’s reflection, it is apparent that the rule of law that was fashioned by the panel professedly in the name of deference to the Executive, and that now binds us, is, in application, a rule of no deference at all. For counsel must now be provided and judicial review had of the Executive’s determination that one is an enemy combatant in every instance in which the petitioner but refrains from affirmative concession that he was seized in a foreign combat zone. The Executive’s undeniably important interests in the prohibition of access to detained enemy combatants for reasons of national security and in the conduct of war free from fear that it will be summoned to court to answer to the Judiciary for its enemy designations, thus, are uncomfortably protected by little more than the hope (vain after the court’s opinion, if not before) that the ha-beas petitioner will gratuitously or foolishly concede that his seizure occurred in a foreign zone of combat.
That the government’s victory is but thinly guised defeat could not be better confirmed than by the arguments that have already been made in opposition to, and in support of, the panel’s opinion by the parties to this dispute. Thus, those appearing on behalf of Hamdi argue, to no surprise and in compelling understatement, that the panel fundamentally erred for the reason that, “it cannot fairly be stated that it is ‘undisputed’ that Hamdi was captured within a zone of active combat operations in a foreign country” “[b]e-cause Hamdi was denied the opportunity to meet with counsel, and was refused the opportunity to dispute the facts put forth by [the government] — including assertions as to where he was captured and what the circumstances were at the time.” Appel-lee’s Petition for Rehearing and Suggestion for Rehearing in Banc, at 12-13. The obvious remedy for this error being, they reasonably claim, a remand for further factual development on the issue, with allowance for participation by Hamdi himself.
And the government, as expected, rejoins that “the type of evidentiary proceeding that appellees seek would raise precisely the same problems concerning judicial oversight of military operations overseas that the panel properly concluded is not only unwise, but unauthorized under our constitutional scheme.” Answer for Respondents-Appellants to Petition for Rehearing and Suggestion for Rehearing en Banc, at 11.
A more Pyrrhic victory would be hard to conceive.
In sum, then, because of its unwillingness to confront head-on the admittedly difficult issue presented by this appeal, decide upon the standard of review required by the Constitution, and resolve the case by application of that standard to the facts proffered in justification for the Ex *360 ecutive’s designation of Hamdi as an enemy combatant of the United States, the panel succeeded in securing neither the guarantees of the Bill of Rights nor the powers committed to the Executive by Article II of the Constitution.
B.
These breaches perhaps could be excused if the panel had divined an unassailable narrower ground for decision than that foreshadowed by either of its bold promises. However, its decision cannot be excused on this basis, because the ground upon which the panel rested its decision is anything but unassailable. For it simply is not “undisputed” that Hamdi was seized in a foreign combat zone.
For its repeated assertions that this circumstance is conceded, see Hamdi v. Rumsfeld, 316 F.3d 450, 459, 461, 465, 473, 475, 476 (4th Cir.2003) (“Hamdi III”), the panel relied solely on the petition filed by Hamdi’s father as next friend. See id. at 460; id. at 461 (stating that the Mobbs affidavit “confirms the material factual allegations in Hamdi’s petition”); id. at 474 (“Hamdi’s petition places him squarely within the zone of active combat and assures that he is indeed being held in accordance with the Constitution....”). As the panel wrote,
[i]n this case, there are two allegations that are crucial to our analysis. First, Hamdi’s petition alleges that he was a resident of and seized in Afghanistan .... Second, the Government’s response asserts that Hamdi is being detained pursuant to the Commander-in-Chiefs Article II war powers and that the circumstances underlying Hamdi’s detentions, as reflected primarily in the Mobbs declaration, establish that Ham-di’s detention is lawful.
Id. at 471 (emphasis added). Thus, the panel opinion quite clearly rests on the petition alone for the court’s conclusion that seizure in a combat zone was “undisputed.”
But the next friend petition says no such thing as the panel held that it does. It states that, “[w]hen seized by the United States Government, Mr. Hamdi resided in Afghanistan.” J.A. 9 (emphasis added). Of course, it is a non sequitur to conclude from the representation that Hamdi resided in Afghanistan at the time of his seizure, that he was also seized in a foreign zone of active combat. In the end, it is obvious that the panel simply missed the critical import of this distinction between residency on one hand, and seizure or capture on the other, even though it recognized — at least in passing — the distinction between the two. As it said, though incorrectly as to the latter, “Hamdi’s petition alleges that he was a resident of and seized in Afghanistan.... ” Hamdi III, 316 F.3d at 471 (emphasis added).
Insistence that the distinction be drawn between acknowledgment of residency and concession of seizure in a combat zone is not to be clever. I have no reason to believe that Hamdi was not in a combat zone at the time of his seizure, and, to the extent relevant, I believe that he was. But, as a court of law, we cannot impute a concession of this circumstance of seizure from an innocuous acknowledgment of residency in a country in which combat was underway. Such is not credible.
No more so can other statements that appear in the next friend petition and relied upon by the panel be fairly taken as concession that Hamdi was actually seized in a foreign combat zone, as opposed to acknowledgment merely that he was a resident of a country in which there was ongoing combat at the time of seizure. The panel recites that,
*361 [according to the petition, “[i]n the course of the military campaign, and as part of their effort to overthrow the Taliban, the United States provided military assistance to the Northern Alliance, a loosely-knit coalition of military groups opposed to the Taliban Government,” and thereby “obtained access to individuals held by various factions of the Northern Alliance.”
Hamdi III, 316 F.3d at 460. The panel apparently viewed the quoted petition passages similarly as conceding seizure in a foreign combat zone. But a careful reading of these passages reveals that neither is such a concession fairly inferable from them. Most obviously, neither passage says anything at all about Hamdi But, additionally, even if they had, there is no reason to presume that every person who was held by the Northern Alliance (assuming, for the moment, that Hamdi falls within that class) was captured in Afghanistan during the course of combat operations. Of course, this may have been the case. But it also may not have been.
The final statement in the next friend petition that the panel quoted, and on which it seemingly relied, was at once materially abbreviated by the panel and materially supplemented. The materiality of both the omission and the addition is apparent when the actual quotation from the petition is read side-by-side with the panel’s altered and paraphrased rendition of that quotation. The petition actually reads as follows:
On information and belief, Mr. Hamdi was captured or transferred into the custody of the United States in the Fall of 2001.
J.A. 10. In its opinion, however, the panel relates the statement in this way:
The petition further alleges that “Hamdi was captured or transferred into the custody of the United States in the Fall of 2001” in Afghanistan. ...
Hamdi III, 316 F.3d at 460 (emphasis added). Thus, terribly significantly given that the panel’s opinion rests on the “undisputed” nature of the circumstance, the panel supplies a geographical location of seizure and detention that the statement in the petition just does not contain, imputing a representation as to this location to the next friend. And though it should not be necessary to put a finer point on it than this, even had the petition statement actually contained the geographical location of seizure and detention that the panel thought, the statement would not support the conclusion that the situs of seizure was conceded. For, even with this significant alteration, the statement would only admit that Hamdi was either “captured or transferred into custody,” not necessarily one as opposed to the other.
In fact, upon reading the petition, it is actually apparent that it scrupulously avoids any admission as to the precise geographical point of' seizure, likely because such was unknown to Hamdi’s father, who filed the petition. See J.A. 11 (Petition: “On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantanamo Bay, Cuba.... On or about January 11, 2002, the precise date unknown to Petitioners but known to Respondents, the United States military transferred Yaser Esam Hamdi to Camp X-Ray, Guantanamo Bay, where he was held until April 2002.”).
Because the panel opinion relies exclusively upon the next friend petition for its conclusion that Hamdi was conceded to have been seized in a foreign combat zone, and because none of the statements in that petition either concede or can be fairly read to concede seizure in such a location, *362 the panel’s opinion, which in turn rests exclusively upon such a concession, is unconvincing.
C.
Sensing the vulnerability of the panel’s opinion, the concurrences in the denial of rehearing en banc (Judges Wilkinson and Traxler) attempt to save the panel opinion by marshaling for the first time today additional support, beyond that relied upon by the panel, for the panel’s conclusion that it has been conceded that Hamdi was seized in a foreign combat zone. Thus, for example, Judge Wilkinson maintains, “Hamdi’s own filings make clear that he was seized in a zone of active combat operations,” ante at 342 (emphasis added), by which he makes reference not only to the next friend petition upon which the panel solely relied, see, e.g., Hamdi III, 316 F.3d at 460; id. at 461 (stating that the Mobbs Declaration “confirms the material factual allegations in Hamdi’s petition”); id. at 471 (“Hamdi’s petition alleges that he was a resident of and seized in Afghanistan .... ”); id. at 474 (“Hamdi’s petition places him squarely within the zone of active combat .... ”), but also to the new materials cited by the government in its response to the petition for rehearing, in support of the court’s conclusion that the location of seizure has been conceded. In particular, excepting a letter that is admittedly “outside the legal arena” and thus obviously irrelevant, Judge Wilkinson cites to Petitioner’s Traverse and Response to Respondent’s Motion to Dismiss filed in the district court and a statement by the district court. Ante at 342.
I have previously expressed my concern about the trend in our court to attempt “to add to, subtract from, or recharacterize the facts recited and relied upon in a challenged panel opinion, or even to fine-tune, if not fundamentally reshape, the legal analysis undertaken by the original panel, in the course of opinions respecting the denial of rehearing en banc.” Jones v. Buchanan, 325 F.3d 520, 538-40 (4th Cir.2003) (Luttig, J., dissenting) (citing cases). Without repeating in full the reasons for this concern here, such attempted modifications are unfair to the litigants, because the parties (and the public) are bound by the panel opinion as it was written and issued, and they may obtain further review only of the issued panel opinion, without regard to modifications suggested by a concurrence in denial of en banc rehearing. In other words, they are bound by the only opinion of law in the case, not by the hypothetical opinion represented by the combination of the original panel opinion and purported modifications made during proceedings appealing for en banc reconsideration. This is not to say that explanatory concurrences in denials of rehearing en banc should never be written by the author of the challenged opinion or by judges who joined in that opinion; it is only to say that when such an opinion would add significant factual or legal support for the judgment reached, the appropriate course is for the panel to modify its opinion formally so as to supply the important new facts or reasoning in an opinion that then becomes the precedent for the court which may be appealed by the parties to the Supreme Court of the United States.
But putting this concern to one side, the very fact that the concurrences have felt need to offer up the additional support that they have is confirmation that the panel at least now senses the analytical softness of its opinion. There would otherwise be no reason to attempt to shore up that opinion with these additional materials, which the panel fully considered originally and rejected as not providing any *363 support for its conclusion that the location of seizure was “undisputed.”
In any event, apart from their irrelevancy now as a matter of law given that they were not relied upon in the panel opinion, these additional materials, as the panel originally concluded, do not any more prove an affirmative concession that Ham-di was captured in a foreign combat zone, than do the statements contained in the petition filed by the next friend — even if, . in combination with that sole filing relied upon by the panel, they render the case slightly closer.
Judge Wilkinson quotes from a traverse filed in the district court which reads that the petitioner’s claim does not “implicate Respondents’ initial detention of Petitioner Hamdi in Afghanistan.” J.A. 64. Much like the acknowledgment of Hamdi’s place of residence, the observation that Hamdi’s claim does not implicate his initial detention does not, and certainly should not in a court, say anything about where he was originally seized — at least not necessarily. As does the law, these parties themselves distinguish between seizure and detention throughout their submissions. If there were any doubt as to the inappropriateness of drawing such an irrebuttable inference as to place of seizure from place of detention in this instance, it should be put to rest by the fact that that very same traverse filing states that “[p]etitioner in no way concedes that Respondents’ factual assertions are true.” J.A. 65 n.l. Indeed, it even specifically states that “information about Petitioner Hamdi prior to his transfer to the custody of [the government] is based on the hearsay of unknown members of the Northern Alliance.” Id. The other materials with which the concurrences now attempts to support the panel’s opinion suffer from the same flaw, as they too speak only as to the place of detention, not the place of seizure.
Thus, neither the panel nor even the concurrences after the fact, adduce a single. statement from Hamdi’s petition or any other filing in this case in which there appears a concession that Hamdi was captured or seized in a foreign zone of active combat operations. A single example suffices to show the extent of the reach attempted by the panel. The concurrences now cite even to a defense counsel’s single word of agreement with a statement made by the district court that Hamdi was “in a fighting situation.” Ante at 342 n. 2 (citing Tr. of Aug. 13, 2002 district court proceedings). Not only is this single word of agreement with this statement made by the district court ambiguous on its face, it is followed by defense counsel’s statement — omitted by the concurrences — that “what is the problem with all of that, of course, is that we have absolutely no detail with regard to the circumstances under which he was initially captured.... We don’t know what happened.” J.A. 394.
D.
But more important than the substantive content of any of these several oblique references marshaled by the concurrences in en banc denial is their source. These statements, however they are interpreted, are not from Hamdi or from counsel acting on his behalf. They are from Hamdi’s father, acting as next friend, who, it has been represented to us, has not even had any contact with his son since the latter was seized over a year ago. As Judge Motz recognizes, even an unambiguous concession as to the location of Hamdi’s seizure in such a third party submission cannot, as a legal matter, bind Hamdi to a fact that in turn is deemed dispositive of his claim for freedom.
In no sense, then, is the place of Ham-di’s seizure “undisputed” by the parties to this suit. An opinion that rests exclusively *364 on the premise of a stipulated agreement as to this circumstance of seizure, as does the panel’s, is simply unconvincing. And it is rendered no more convincing, even if it is thought more palatable, by the fact that resting decision on this ground permits superficial distinguishment on fact (though not in principle) of the case in which a citizen seized on American soil is denominated an enemy combatant, see Hamdi III, 316 F.3d at 465 (citing and distinguishing Padilla v. Bush, 283 F.Supp.2d 564 (S.D.N.Y.2002)), which case the panel feared might unavoidably be reached by a decision on the issue as presented and under the facts as proffered.
E.
Judge Traxler writes extensively in defense of the panel opinion, although, beyond embracing the materials newly cited by Judge Wilkinson, he does little more than repeat at length the panel’s reasoning (where needed, embroidering upon that opinion for himself), and quote liberally from this and Judge Motz’s opinion. But the juxtaposition of the particular defenses that he chooses to make, with their obvious responses, all but confirms to the careful reader the shortcomings in the panel’s opinion. It is undoubtedly for this reason that Judge Traxler’s co-panelists, who, with him, jointly authored the original opinion, do not align themselves with him today.
1.
To begin with the most significant, Judge Traxler, though writing to bolster the panel’s conclusion that the place of seizure in a foreign combat zone was in fact conceded in the next friend petition, actually ends up admitting that the petition itself does not explicitly concede seizure in such a zone. See, e.g., ante at 345-346 (“Judge Luttig correctly observes that the habeas petition does not explicitly state that ‘Hamdi was captured in a zone of active combat in a foreign theater of conflict.’”); id. at 345 (stating that “the petition[ ] fail[s] to affirmatively state that Hamdi was captured in a foreign combat zone”). This is an admission of no small consequence, of course, for the panel relied entirely upon the existence of such a concession of capture in a foreign combat zone in the petition, and the opinion plainly regarded this concession as having been made explicitly and unequivocally. Certainly, until today, the reader would have never thought otherwise. Nowhere, for instance, is there even the slightest suggestion that the panel regarded this dis-positive concession as merely “implicit.” And there certainly is no mention of any inferential steps of which one would expect explanation before a dispositive concession is implied by a court.
By this candid admission alone, Judge Traxler has made out the case against the panel’s opinion better than have either Judge Motz or myself. For if, as Judge Traxler says, this is a “momentous” case, then he has now confirmed that it was dismissed on the basis of a concession believed by the panel (though disputed by the parties) to have been made only “implicitly,” and at that, by a third party to the action who not only had had no contact whatsoever with the petitioner himself, but who even disavowed that he could speak to the facts except upon information and belief.
Unwittingly compounding further the analytical problems that beset the panel’s opinion as it is written, Judge Traxler next attempts to marshal for the first time support for what was the panel’s assumed, but wholly unsupported, holding that a next friend may concede facts sufficient to conclude a litigation when the detainee is inaccessible to the next friend by reason of the *365 respondent’s own actions. All that need be said as to this effort is that, after now critically addressing himself as a single judge to the proposition that the panel originally uncritically assumed, Judge Traxler is able to cite only a single case and that of a district court almost forty years ago. See ante at 349 (citing Hall v. Hague, 34 F.R.D. 449 (D.Md.1964)). And not even that case holds that a next friend may concede the facts that will lead to the dismissal of the plaintiffs suit in circumstances anytuhere approaching those presented by this case. Thus, on this score as well, has Judge Traxler made the case for dissent better than have either Judge Motz or myself.
Judge Wilkinson, to his credit, recognizes as much, and attempts to salvage the panel opinion on this critical point by asserting that “ordinary civil [and] criminal litigants” cannot be bound by next friend concessions, but that Hamdi must be so bound, for the reason that he allegedly was seized in a foreign zone of active combat operations. See ante at 342 n. 2. But in attempting the salvage, Judge Wilkinson himself comes very' close (although he does not realize it) to outright conceding the indefensibility of the point, because the binding character of a next friend concession obviously does not turn upon whether the concession is or is not made on behalf of an individual allegedly seized abroad, or even an individual seized abroad in a foreign theater of battle. Nor does the separation of powers have anything to do with this necessary legal fact. And even if the binding character of a next friend concession somehow did turn upon the location of the petitioner’s seizure, the principle would cut in precisely the opposite direction from that believed by Judge Wilkinson: the alleged concession might be binding upon one seized domestically with whom the next friend is in unfettered contact, but presumptively would never be binding upon one seized abroad and held incommunicado.
In tacit recognition that these belated arguments as to the fact of concession and the legal acceptability of third-party fact concessions ring hollow, Judge Traxler (notably speaking only for himself) suggests finally that the panel would have reached the same outcome in this case even had it not concluded that the place of seizure was undisputed. See ante at 355 (“Nor for that matter, did we even hold that the Mobbs Declaration would have been insufficient had the place of capture been in dispute in this case.”). I do not know quite how to respond to this statement, because I am in no position to say that, irrespective of what the panel wrote, it would not have decided the case differently had it concluded that the location of seizure was disputed. All that I, the parties, and the public can do is reason inferentially from the opinion for the court, which the panel did write. And based upon that opinion, while Judge Traxler may now in hindsight characterize the supposed concession by Hamdi’s next friend as insignificant, the panel opinion he coauthored treats it as anything but. The opinion well speaks for itself in rebuttal to this suggestion. Said the panel, in emphasized words that Judge Traxler would have us overlook today, the concession of seizure in a combat zone made in the petition is “crucial to our analysis.” Hamdi III, 316 F.3d at 471.
Thus, while Judge Traxler may now want to say that the panel would decide the case no differently absent a concession, he is faced with self-contradiction to so maintain, given that the opinion he coauthored went out of its way to denominate as “crucial” to its analysis the concession that it mistakenly believed was made. The unavoidable inference to be drawn from such a characterization of fact dispos- *366 itively relied upon is not, as Judge Traxler would now have it, that absent that fact, the disposition would still be the same, but rather, that the disposition reached on the strength of that fact quite likely would be different if the fact were otherwise.
2.
Unable to shore up the foundation of the panel’s opinion, that Hamdi’s next friend conceded that Hamdi was seized in a zone of active combat operations and bound Hamdi to that fact, Judge Traxler attempts to shift the focus away from the panel’s opinion and the ultimate legal issue entirely, by erecting and then attacking a series of straw man arguments he ascribes to this dissent. Thus, he suggests that I argue that the facts alleged in the petition should be taken as false, ante at 348-349, and that I am “attemptfing] to rewrite the case history and the substance of the habe-as claim,” ante at 349. Of course, I make no such arguments. I make the simple point that the petition does not affirmatively concede capture in a foreign combat zone, a fact that Judge Trader now admits, see ante at 346.
Judge Trader next argues that I have unfairly stated that neither party has attempted to defend the significance of the place of capture, ante at 355-356. Again, I make no such statement. What I have stated is that neither party assigned any legal significance to the argument relied on by the panel that the locus of capture was “undisputed.” (And, given the record as I have recited it herein, it is unsurprising that they did not.) But to remove the source of my objection from all doubt, and as I explain more fully below, it is not the panel’s reliance on the place of capture that troubles me. Rather, it is the panel’s indefensible reliance on an assumed concession by the petitioner, as opposed to a proffer by the government, to establish this “fact.”
In his final attempt to shift the focus to a criticism that I have not made, but to which response is easier, Judge Trader asserts that I am criticizing the panel for issuing a narrow, as opposed to a broad, holding. See ante at 355. As I have quite clearly said, however, the panel’s error in my view was not in its search for a narrower ground, but rather in the unpersua-siveness of the putatively narrower ground on which it ultimately relied — a concession by Hamdi as to the place of his seizure. Not only is this narrower ground of concession factually unpersuasive, it is also unpersuasive as a matter of law, for the reasons Judge Motz and I have set forth.
3.
When all is said and done, then, Judge Trader’s writing today both confirms the vulnerabilities inherent in the panel’s opinion he seeks to defend and puts the lie to the panel’s assertion that, by grounding its decision on the reputed concession by Hamdi’s next friend, it both provided Ham-di meaningful judicial review and protected the President’s Article II powers to determine who and who are not enemies of the United States.
As to the former, not only does he admit that there is no such explicit concession as the panel believed, but he is forced as well to acknowledge that there is not even legal support for the panel’s unexamined supposition that a next friend can actually concede a dispositive fact without even the petitioner’s knowledge. As to the latter, his analytical admissions betray well that Hamdi was not provided the meaningful judicial review that he was promised. And, through his attempt to discount the importance of the supposed concession to the panel’s disposition, he only draws at *367 tention to the pivotal importance of that supposed concession and thereby to the trifling deference the panel accorded the President of the United States in his determinations of who constitute enemies of our Country. A more forceful explanation of the grounds for dissent I could not make.
II.
Because of the overarching importance of the opinion of law that resolves the issue presented by this appeal, because of the panel opinion’s dismissiveness of the substantial interests at stake in this case for both citizen and government, and because of the analytical vulnerability of the court’s opinion as it stands, I believe that both the United States and the petitioner would be served by reconsideration by our full court.
Upon reconsideration, we should decide the critical issue of the appropriate standard that is to govern the Judiciary’s review of an individual’s challenge to an Executive designation of enemy combatant status, the indecision of which by the panel I believe fails to serve the substantial interests of not only the parties but also the public in the resolution of this issue. Having decided the governing standard, we should decide the issue of whether that standard has been satisfied in this ease by the government’s proffer of the facts contained in the Michael H. Mobbs affidavit, the like indecision of which by the panel also, I believe, fails to serve the parties and the public.
III.
Although I reserve ultimate judgment because of the difficulty of the issue and because I write in dissent from the request to rehear the case and therefore without the benefit of argument, I believe, as to the standard of review, that the government may be correct that
[pjroper respect for separation of powers and the limited role and capabilities of courts in matters of national security may well limit the courts to the consideration of legal attacks on detention of the type considered in [Ex parte] Quirin[, 317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3 (1942)] and [In re] Territo, [156 F.2d 142 (9th Cir.1946),] and raised by the petition in this case. At most, however[] ... a court’s proper role in a habeas proceeding such as this would be to confirm that there is a factual basis supporting the military’s determination that a detainee is indeed an enemy combatant.
Br. of Respondents-Appellants at 28 (internal citation omitted); see also id. at 36 (“[T]o prevail under a constitutionally appropriate standard, the government would at most need to provide some factual basis for supporting the military’s determination that Hamdi is an enemy combatant.”). That is, I believe that the President of the United States may well be entitled under the Constitution to receive from the Judiciary the deference afforded by a standard selected from those along this continuum, when, in exercise of the powers conferred upon him by Article II of the Constitution, he designates a person as an enemy combatant against this Nation.
As to the application of the standard to the facts proffered by the government in support of the Executive’s designation of Hamdi as an enemy combatant’ I reserve ultimate judgment for the same reasons. I am prepared to say, however, that I would likely conclude, as argued by the United States, that the facts recited in Special Advisor Mobbs’ affidavit, as to which there is not even hint of fabrication, are sufficient to satisfy the constitutionally appropriate standard for the President’s *368 designation of an enemy of the United States.
This affidavit states that Hamdi traveled to Afghanistan in- the summer of 2001, where he promptly affiliated with a Taliban military unit and received weapons training. It further states that during a battle between the Taliban and the Northern Alliance later that year, Hamdi’s Taliban unit surrendered to Northern Alliance forces. It continues that Hamdi was directed to surrender his Kalishnikov assault rifle (ie., AK-47) to Northern Alliance forces and was subsequently imprisoned. The affidavit represents that, while in prison, Hamdi. was determined by the United States military screening team to meet the criteria for enemy combatants over whom the United States was taking control. And finally, the affidavit relates that in January 2002, a Detainee Review and Screening Team established by the Commander of the United States Central Command reviewed Hamdi’s record and determined again that he met the criteria established by the Secretary of Defense for individuals over whom United States forces should take control and transfer to Guantanamo Bay.
In addition to these declarations made under penalty of perjury by the appointed representative of the government, the President of the United States, through his Solicitor General, has represented to this court that in his judgment Hamdi is indeed an enemy combatant, detention of whom is warranted in the interests of national security.
The panel’s contrary holding notwithstanding, I suspect that more than this would be unnecessary to affirm the President’s decision to designate Hamdi an enemy of the United States.
In all events, I believe that it is the obligation of this court to decide these issues that have been presented to us by the United States and by one of its citizens. At times, judicial avoidance of the difficult and the politically charged is the more prudent and the more faithful to the judicial role, both. This is a case in which it is neither.
# % # sH H* # # Hí
For the reasons set forth, I would grant the suggestion for rehearing en banc. Accordingly, I respectfully dissent from the court’s denial of that suggestion.